IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**KESHOD WILLIS, BY AND THROUGH**
**HIS PARENT AND NEXT FRIEND, SHEILA WILLIS;**
**AND SHEILA WILLIS, INDIVIDUALLY**                                        **PLAINTIFFS**

**VERSUS**                                        **CIVIL ACTION NO.  2:06cv193KS-MTP**

**LUMBERTON INDEPENDENT**
**SCHOOL DISTRICT**                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#34]** filed on behalf of the defendant.  The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted.  The court specifically finds as follows:

## FACTUAL BACKGROUND

Plaintiff Keshod Willis has recently completed the fifth grade student at the Lumberton School District.  Keshod, who has been a student in the Lumberton School District for most of his years in school, has been held back twice, repeating the first and the fourth grades.  A large portion of his second placement in the fourth grade was in

1

an "alternative" school due to his disruptive behavior. However, Keshod's fifth grade placement, during the 2006-2007 school term, has been in a regular classroom at Lumberton Elementary School and he has had, by all accounts, a successful fifth grade year. In fact, the report card presented with the summary judgment evidence indicates above average marks of mostly A's and B's in most subjects.

As stated, Keshod failed the first grade, but passed when he repeated it the next year. He completed second and third grades without problem, but failed the fourth grade. At the beginning of the 2005-2006 school year, as he was to repeat the fourth grade, his family was displaced to Florida soon after the start of the term in the wake of Hurricane Katrina. Keshod attended school in Florida for approximately a month, and did not return to the Lumberton School District until around November of that year.

Not long after his return, due to his disruptive behavior, he was placed in an "alternative" school, designed primarily to address behavior problems. *See* Miss. Code Ann.§37-13-92 . The plaintiffs do not contend that this educational placement was inappropriate for Keshod, but note in their Complaint that on March 24, 2006, Keshod was involved in a fight on the school bus and, thereafter, expelled from school. However, contrary to the plaintiffs' implication that he was expelled from all school programming following the fight, Keshod returned to class after only a suspension of several days. He completed the fourth grade successfully at the alternative school and was promoted to the fifth grade.

Keshod's mother became concerned that he needed to attend classes with children closer to his age group since he had fallen behind by two years. So at the beginning of the present school year in August 2006, Keshod was given a placement

2

test at the request of his mother to determine if he could proceed to the sixth grade. He did not pass the placement test and was thus placed in the fifth grade.

On August 11, 2006, the plaintiffs filed the present Complaint against the defendant, Lumberton School District, alleging that the defendant violated the Individuals with Disabilities in Education Act ("IDEA") in their education of Keshod. Specifically, they allege that Keshod demonstrated academic and behavioral difficulties which required the defendant, pursuant to the IDEA, to test and identify Keshod as a special needs student, which they did not do. The plaintiffs further allege that the school district failed to offer Keshod a program reasonably calculated to provide him with an educational benefit, failed to provide him with appropriate support and services, and failed to provide him with appropriate social skills modeling.

The plaintiffs bring three claims which they contend resulted from the defendant's alleged violations as set forth in their Complaint that the defendant school district denied Keshod a free, appropriate public education to which he is entitled under the IDEA; that the defendant refused to adopt policies, procedures and practices or to take appropriate measures necessary to ensure that Keshod receives a free appropriate public education; and that the defendant acted (and/or failed to act) in bad faith and with an intentional disregard of Keshod's equal protection and substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution.

On December 27, 2006, the defendant filed its Motion for Partial Summary Judgment on the issue of damages sought by the plaintiffs for their third claim, in which they seek compensatory and punitive damages under 42 U.S.C. § 1983 for the

defendant's alleged bad faith and intentional disregard of Keshod's equal protection and substantive due process rights. In its Motion, the defendant contends that, even if it had violated the IDEA in its programming for Keshod, the compensatory and punitive damages sought by the plaintiffs are not recoverable under §1983 for violations of the IDEA. Because of the disposition of the present motion, the court finds it unnecessary to separately address this issue.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

6

## **IDEA**

In seeking relief for the plaintiffs' first two claims, the alleged denial of a free, appropriate public education to Keshod, and the alleged lack of policies, procedures and practices, and appropriate measures ensuring that Keshod receives a free appropriate public education, the plaintiffs ask the court to order additional appropriate compensatory education. While compensatory education is the relief contemplated by the IDEA for violations thereof, the defendant contends that Keshod has ably demonstrated, during his current placement over the course of the 2006-2007 school term, that he has no need for any compensatory education. In fact, the plaintiffs agree in their deposition testimony that Keshod's current educational placement and program are resulting in good grades and good behavior, and this is certainly supported by the report card and other evidence furnished to the court.

The IDEA, 20 U.S.C. §§ 1400 *et seq.*, and its predecessors were enacted in response to the failure of public schools to provide meaningful education to children whose disabilities prevented them from succeeding in the usual classroom environment. The heart of the IDEA, and the first of its stated purposes listed in the statute, is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §1400(d)(1)(A).

The defendant disagrees with the plaintiffs' assertion that Keshod has one or more of the disabilities specified in the IDEA's list of disabling conditions included in the

Act, and asserts that even if he did, such a diagnosis alone is insufficient to bring him within the coverage of the IDEA.  The defendant is correct that not all children who demonstrate at least one of the IDEA's enumerated disabling conditions fall within the IDEA's terms.  Only a disabled child "who, by reason (of his disability), needs special education and related services" qualifies for the plans and relief found in the law.  *See* 20 U.S.C. §1401(3)(A).

It has been long held that the IDEA does not guarantee the best educational placement a child might be afforded, but that he be provided with a "basic floor of opportunity that will permit him 'to benefit' from the instruction."  *Adam J. v. Keller Independent School Dist.*, 328 F.3d 804, 808 (5th Cir. 2003)(citations omitted.)  The IDEA demands that a child be educated as far as possible within a "regular" classroom setting, *Id.* at 810, and requires that the child be educated in the "the least restrictive environment;" that is, the least segregated, and the least divergent from that provided to a non-disabled student.   20 U.S.C. §1412(a)(5)(A).

As the defendant points out, this is precisely the placement in which Keshod is now achieving success.  Thus the defendant argues that even if the IDEA were applicable for Keshod, its directives and goals have been met, as evidenced by his success in his regular classroom placement this year.  *See, e.g.*, *Houston Independent School Dist. v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000).

The plaintiffs contend that Keshod has "mental impairment" which entitles him to the guarantees of the IDEA to a free, appropriate public education.  They allege that Keshod demonstrates a disorder which "was frustrating his efforts to learn in a

mainstream classroom." The defendant denies that Keshod is a disabled child as defined by the IDEA, and further denies that it had any notice or reason to know that he was disabled such that he would come within the IDEA's purview. It is the position of the defendant that while Keshod has at times shown behavior problems and poor grades, he never demonstrated any signs of a disability as defined in the IDEA either in testing or in classroom performance.

The plaintiffs have provided no evidence to support the allegations of their Complaint. In fact, in her deposition taken on February 16, 2007, plaintiff Sheila Willis was asked if she was satisfied with Keshod's education, and her only concern was that Keshod was behind his age peers. She acknowledged that he had taken a placement test for a higher grade, but "he didn't pass the test at all." She expressed hope that he might be able to take another placement test, but agreed that he should remain in his current grade placement until he passed a placement test indicating he was ready to move up. Beyond this, she was happy with his placement and could offer no suggestions for what more the school district could do for Keshod, as "his teachers are supportive and they are working with him and sending extra work and stuff home with him ... ."

After a careful review of all of the evidence presented, the court concludes that Keshod Willis does not have a "disability" as defined by the IDEA and is not entitled to relief thereunder. Further, even if he had such a disability, he does not demonstrate any need for "special education and related services," the relief the Act is designed to provide since it is abundantly cleat that the defendant is currently providing Keshod with a placement that has provided him an entire school year of both academic and

behavioral success, two areas that in the past proved difficult for him.  Keshod has proven that he can be successful without special classes or additional services, within a regular classroom, which is the ultimate goal of the IDEA.

    IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment **[#34]** is Granted and the plaintiffs' complaint is dismissed with prejudice and that all other pending motions are dismissed as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

    SO ORDERED AND ADJUDGED this the 16th day of July, 2007.

    *s/Keith Starrett*
    UNITED STATES DISTRICT JUDGE